AO 91 (Rev. 11/11)  Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Northern District of California

FILED
Oct 18 2024
Mark B. Busby
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO

| United States of America | ) |
|---|---|
| v. | ) |
| Wilson Isaias CHE CARRILLO | ) Case No. 3:24-mj-71508 MAG |
| | ) |
| *Defendant(s)* | ) |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.
On or about the date(s) of __10/17/2024__ in the county of __San Francisco__ in the __Northern__ District of __California__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. §§ 841(a)(1) and (b)(1)(C) | Possession with intent to distribute methamphetamine |

This criminal complaint is based on these facts:

See attached affidavit

☑ Continued on the attached sheet.

/s/ Andrew Fishell
*Complainant's signature*

Andrew Fishell, DEA Special Agent
*Printed name and title*

Approved as to form __CHH__
AUSA __Christiaan H. Highsmith__
by telephone

Sworn to before me ~~and signed in my presence~~.

Date: October 17, 2024

*Judge's signature*

City and state:   San Francisco, CA

Hon. Peter H. Kang, U.S. Magistrate Judge
*Printed name and title*

# AFFIDAVIT IN SUPPORT OF AN APPLICATION FOR AN ARREST WARRANT AND CRIMINAL COMPLAINT

I, Andrew Fishell, a Special Agent with the Drug Enforcement Administration (DEA) having been duly sworn, hereby depose and state as follows:

## INTRODUCTION

1. I make this affidavit in support of an application for an arrest warrant and criminal complaint charging Wilson Isaias CHE CARRILLO, (also known as Wilson CHE-CARRILLO and Isaias CHE-CARRILLO) ("CHE CARRILLO") with a violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C), based on his possession with the intent to distribute the following controlled substance: a mixture and substance containing a detectable amount of methamphetamine, on or about October 17, 2024, in San Francisco, California, in the Northern District of California.

## SOURCES OF INFORMATION

2. The facts in this affidavit come from my personal observations, my training and experience, information from records and databases, and information obtained from other agents, officers, and witnesses. Where statements made by other individuals (including other Special Agents and law enforcement officers) are referenced in this Affidavit, such statements are described in sum and substance and in relevant part. Similarly, where information contained in reports and other documents or records is referenced in this Affidavit, such information is also described in sum and substance and in relevant part.

3. Because this Affidavit is submitted for the limited purpose of establishing probable cause for a criminal complaint and arrest warrant, I have not included every fact known to me about this case. Rather, I have set forth only the facts that I believe are necessary to support probable cause for a criminal complaint and arrest warrant. My understanding of the facts and circumstances of the case may evolve as the investigation continues.

**AFFIANT BACKGROUND**

4. I have been employed as a Special Agent (SA) of the United States Department of Justice, Drug Enforcement Administration ("DEA") since April 2022. I am currently assigned to investigate drug trafficking organizations as a member of the DEA, San Francisco Division Task Force Group 1. I am a law enforcement officer of the United States Department of Justice, DEA, within the meaning of Section 878(a) of Title 21, United States Code; that is, an officer who is empowered by law to conduct investigations, make arrests, and seize property for violations of Title 18, United States Code and Title 21, United States Code. I am a "Federal law enforcement officer" within the meaning of Rule 41(a)(2)(C) of the Federal Rules of Criminal Procedure; that is, a federal law enforcement agent engaged in enforcing criminal laws and authorized to request a search warrant.

5. Prior to my employment with the DEA, I was employed by the Fairfax County Virginia Community Services Board for three years as a Behavioral Health Specialist and the West Virginia Division of Corrections and Rehabilitation for one year as a Correctional Counselor. I received a Bachelor's Degree in Criminal Justice in 2014.

6. I am an investigative or law enforcement officer of the United States within the meaning of 18 U.S.C. § 2510(7). I am empowered by law to conduct investigations, to execute search warrants, and to make arrests for offenses of Federal law, including violations of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C).

7. As a DEA Special Agent, I have assisted in the execution of search warrants for controlled substances and/or related paraphernalia, indicia, and other evidence of violations of federal drug statutes. I have participated in investigations targeting individuals and organizations trafficking controlled substances as defined in Title 21, United States Code, Section 801.

8. I received 17 weeks of specialized drug law enforcement training at the DEA training academy in Quantico, Virginia, from January 2022 to April 2022. This training included several hundred hours of comprehensive, formalized instruction in, but not limited to,

narcotics investigations, drug identification, detection, identification and seizure of drug related assets, undercover operations, and electronic and physical surveillance procedures. This training included instruction in the investigation of federal drug violations, including, but not limited to Title 21, United States Code, Sections 841 and 846.

9. Through my training, experience, and interaction with other experienced Special Agents, Task Force Officers, and other drug investigators, I have become familiar with the methods employed by drug traffickers to smuggle, safeguard, store, transport, and distribute drugs, and to collect and conceal drug-related proceeds, and to communicate with other participants to accomplish such objectives.

10. I have personally participated in the investigation discussed in this affidavit. I am familiar with the facts and circumstances of the investigation through my personal participation in it based on several investigative techniques, including discussions with agents of the DEA and with other law enforcement agencies, and review of records and reports relating to the investigation. Unless otherwise noted, wherever in this affidavit I assert that a statement was made, the statement is not being recounted verbatim but instead only in substance and in part. Facts not set forth herein, or in any attached exhibits, are not being relied on in reaching my conclusion that the requested order should be issued. Nor do I request that this Court rely on any facts not set forth herein in reviewing this application.

## APPLICABLE STATUTE

11. **Possession of Controlled Substance with Intent to Distribute**. Under Title 21, United States Code, Sections 841(a)(1) and (b)(1)(C), it is unlawful for any person to knowingly or intentionally possess with intent to distribute a federally controlled substance. Under 21 C.F.R. § 1308.12, methamphetamine is a Schedule II controlled substance.

## STATEMENT OF PROBABLE CAUSE

12. On or about October 17, 2024, CHE CARRILLO was arrested by agents from DEA, Homeland Security Investigations (HSI), and officers from San Francisco Police Department (SFPD) on Eddy Street near Hyde Street in San Francisco, California, in the

Northern District of California. Based on the facts described below, there is probable cause that CHE CARRILLO violated 21 U.S.C. §§ 841(a)(1) and (b)(1)(C), based on his possession with intent to distribute a mixture and substance containing a detectable amount of methamphetamine.

13. On October 17, 2024, at approximately 12:43 a.m., a police officer acting in an undercover capacity (UC) was walking in the area of Eddy Street and Hyde Street in San Francisco. The UC walked toward a Hispanic male wearing a light gray hooded sweatshirt, blue jeans, and a baseball hat. This male was later identified as Wilson CHE CARRILLO.

14. As the UC walked toward CHE CARRILLO, CHE CARRILLO said to the UC "crystal" – a street term for crystal methamphetamine. The UC then asked if CHE CARRILLO had "crystal" and requested to purchase half an ounce of the crystal methamphetamine for eighty dollars. CHE CARRILLO then retrieved a clear plastic baggie from his person. The UC saw that the clear plastic baggie appeared to contain methamphetamine. The UC told CHE CARRILLO that the baggie of suspected methamphetamine was not enough and asked for more. CHE CARRILLO then told the UC to wait.

15. Law enforcement present during the undercover operation followed CHE CARRILLO, who walked away as the UC stayed on Eddy Street.

16. At approximately 12:53 a.m., law enforcement observed CHE CARRILLO walk to the intersection of Ellis Street and Hyde Street. Near the intersection, CHE CARRILLO appeared to be talking to an unidentified male. Moments later, the unidentified male walked to a group of individuals who were also near the intersection. Law enforcement then observed the unidentified male return to CHE CARRILLO. CHE CARRILLO then walked back to the intersection of Eddy Street and Hyde Street, where the UC was waiting.

17. At approximately 12:56 a.m., CHE CARRILLO approached the UC and the UC said "eighty" – referring to the price for the methamphetamine. The UC handed CHE CARRILLO $80 U.S. currency (marked and serialized DEA Official Advanced Funds) and CHE CARRILLO handed the UC a plastic baggie containing suspected methamphetamine. The UC

asked CHE CARRILLO if the suspected methamphetamine was a half-ounce. CHE CARRILLO said it was a half-ounce and the UC walked away from the location.

      18.    Based on the above, law enforcement believed probable cause existed to arrest CHE CARRILLO for a violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C).

      17.    At approximately 12:59 a.m., law enforcement personnel converged on the defendant's location, identified themselves as law enforcement, and arrested CHE CARRILLO for the distribution of controlled substances on Eddy Street.

      18.    At the scene of the arrest, law enforcement personnel conducted a search of CHE CARRILLO's person incident to arrest and located the following:

      a.    a clear baggie containing a crystal substance suspected to be methamphetamine, located in CHE CARRILLO's sweatshirt pocket, which was determined to weigh 9.9 grams (including packaging), pictured below:



      b. a small clear baggie containing a white substance suspected to be cocaine, located in CHE CARRILLO's sweatshirt pocket, which was determined to weigh 0.5 grams (including packaging), pictured below:



19. Upon searching CHE CARRILLO's person at the scene of the arrest, law enforcement recovered the marked and serialized DEA Official Advanced Funds.

20. The suspected methamphetamine purchased from CHE CARRILLO was determined to weigh 16.2 grams (including packaging), pictured below:



21. Upon booking, law enforcement recovered an additional 1.1 grams (including packaging) of suspected methamphetamine and 0.1 grams (including packaging) of suspected cocaine from CHE CARRILLO's wallet during a secondary search.

22. The suspected methamphetamine seized from CHE CARRILLO's pockets and wallet as well as the methamphetamine purchased from CHE CARRILLO tested presumptive positive for methamphetamine utilizing a TruNarc Analyzer field testing device. The combined weight of the purchased and seized suspected methamphetamine weighed 27.2 grams in aggregate gross weight (including packaging).

23. Based on my training and experience, the amounts of controlled substances that CHE CARRILLO had on his person when he was arrested on or about October 17, 2024, were consistent with the amount possessed for distribution as opposed to mere personal use. Law enforcement further found a cell phone and cash bills totaling $60.25 in multiple denominations on CHE CARRILLO's person; I know from my training and experience that street-level narcotics transactions are commonly conducted with cash. The location of the arrest in San Francisco's Tenderloin District, an area known for a high volume of narcotics trafficking activity, further supports my conclusion that CHE CARRILLO possessed the narcotics, including methamphetamine, for the purpose of distribution or sale.

## CONCLUSION

24.     Based on the facts and circumstances set forth above, there is probable cause to believe that on or about October 17, 2024, in the Northern District of California, CHE CARRILLO possessed with the intent to distribute a mixture and substance containing a detectable amount of methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C).  Accordingly, I respectfully request that the Court issue a criminal complaint and a warrant for his arrest.

*/s/ Andrew Fishell*

_____
Andrew Fishell
Special Agent
Drug Enforcement Administration

Sworn to before me over the telephone and signed by me pursuant to Fed. R. Crim. P. 4.1 and 4(d) on this 17th day of October 2024.

_____
HONORABLE PETER H. KANG
United States Magistrate Judge